771 So.2d 856 (2000)
Lisa C. LEWIS, Plaintiff-Appellant,
v.
Mark Shannon LEWIS, Defendant-Appellee.
No. 34,031-CA.
Court of Appeal of Louisiana, Second Circuit.
November 3, 2000.
Rehearing Denied November 30, 2000.
*857 Richard Ducote, Counsel for Appellant.
A. Richard Snell, Bossier City, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
STEWART, J.
The appellant, Lisa C. Lewis, filed a petition for divorce, domestic abuse assistance, child custody, child support, and spousal support against her former husband, the appellee, Mark Shannon Lewis. In that pleading, Ms. Lewis detailed the wide-range of abuse that she has suffered at the hands of Mr. Lewis. Following a bench trial, Mr. Lewis was awarded joint custody, and was named as the primary domiciliary parent for both children. Thereafter, Ms. Lewis brought this appeal. For the following reasons, we hereby reverse the decision of the trial court.

FACTS/PROCEDURAL HISTORY
Mark Shannon Lewis and Lisa C. Lewis were married on July 10, 1989. Two children were born of the marriage. In January 1997, Ms. Lewis filed a petition for divorce, domestic abuse assistance, child custody, child support, and spousal support, alleging that Mr. Lewis committed numerous acts of violence against her during the course of the marriage. Thereafter, an interim agreement was reached for joint custody and Ms. Lewis was designated as the domiciliary parent. At that time, Mr. Lewis was granted visitation every other weekend.
Mr. Lewis filed an answer and reconventional demand seeking domiciliary custody of the children and child support. He alleged that Ms. Lewis had given the children to him and that Ms. Lewis was abusive to both he and the children. Thereafter, Ms. Lewis obtained new counsel who moved for a continuance. Ms. Lewis filed an answer to the reconventional demand and amended her petition to seek a proper evaluation of Mr. Lewis, sole custody, and supervised visitation for Mr. Lewis under the Post-Separation Family Violence Relief *858 Act, La. R.S. 9:361-9:369. The trial court appointed Dr. Bruce McCormick, a psychologist, to evaluate the parties and the children.
In July 1998, a divorce judgment was signed. In September 1998, upon the conclusion of the custody and visitation trial, although the trial judge made a finding that Mr. Lewis had been abusive towards his wife, he awarded joint custody, designating Mr. Lewis as the primary domiciliary parent for both children. Ms. Lewis was granted visits every other weekend, and costs were split equally. Furthermore, the parties were ordered to attend parenting classes, and to notify the trial court of their progress. Also, Ms. Lewis was ordered to pay $250 per month in child support, and reciprocal injunctions were granted against harassment. Despite the uncontroverted evidence that proved that Mr. Lewis had severely abused Ms. Lewis during the marital relationship, the trial judge refused to apply the provisions of the Post-Separation Family Violence Relief Act. Instead, the trial judge found that it was in the best interest of the children that they live with their father. Thereafter, Ms. Lewis brought this appeal.

DISCUSSION
By assignment of error, Ms. Lewis argues that the trial court erred in failing to apply the provisions of La. R.S. 9:361-9:369, the Post-Separation Family Violence Relief Act. Ms. Lewis asserts that a clear history of family violence exists under the facts in this case. As such, Ms. Lewis contends that the trial judge should have applied La. R.S. 9:361-9:369 in making its custody determination.
A trial court's determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Cleeton v. Cleeton, 383 So.2d 1231 (La.1979) (on rehearing); Bordelon v. Bordelon, 390 So.2d 1325 (La.1980); Powell v. Powell, 28,911 (La.App.2d Cir.12/11/96), 684 So.2d 1084; Stephens v. Smith, 30,028 (La.App.2d Cir.12/10/97), 704 So.2d 943; Stewart v. Stewart, 30,161 (La.App.2d Cir.01/21/98); 705 So.2d 802, writ denied 98-0748 (La.05/01/98), 718 So.2d 418. The trial judge, having observed the witnesses, is in the best position to determine credibility. Bunch v. Bunch, 469 So.2d 1191 (La.App. 3rd Cir.1985); Broussard v. Broussard, 462 So.2d 1386 (La.App. 3rd Cir.1985).
With regard to child custody and visitation, the Post-Separation Family Violence Relief Act, La. R.S. 9:364(A) states the following:
There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent's participation as a custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.
In Simmons v. Simmons, 26,414 (La. App.2d Cir.01/25/95), 649 So.2d 799, this court held that in determining whether a parent has a "history of perpetrating family violence," the trial court should look at the entire chronicle of the family, remaining mindful that the paramount goal of the legislation is the children's best interest. Such factors as the number, frequency, *859 and severity of incidents will be relevant, as well as whether the violence occurred in the presence of the children, and to what extent there existed provocation for any violent act. Stated differently, the determination must be based on a review of the total circumstances of the family, and necessarily involves a weighing of the evidence. Simmons v. Simmons, supra.
Should a history of family violence be proven to exist, such that application of the provisions of La. R.S. 9:361-9:369 is mandated, failure to apply the provisions of La. R.S. 9:361-9:369 is reversible legal error, and the appellate court should conduct a de novo review of the record and render judgment on the merits. See Hicks v. Hicks, 98-1527 (La. App. 3d Cir.05/19/99), 733 So.2d 1261; Simmons v. Simmons, supra. Indeed, it is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). However, the Supreme Court of Louisiana, along with this court, have consistently held that where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and if the record is otherwise complete, the appellate court should make its own independent de novo review of the record. See Evans v. Lungrin, 97-0541 (La.02/06/98), 708 So.2d 731; McLean v. Hunter, 495 So.2d 1298 (La.1986); Picou v. Ferrara, 483 So.2d 915 (La.1986); Masters v. Masters, 33,438 (La.App.2d Cir.04/05/00), 756 So.2d 1196.
The first issue for consideration is whether the trial court committed legal error in failing to apply the provisions of La. R.S. 9:361-9:369. In other words, we must assess whether either party has a history of perpetrating family violence such that application of La. R.S. 9:361-9:369 is mandated. If it is established that either party has a history of perpetrating family violence, then we will find that the trial court committed legal error in failing to apply the provisions of the Act. See Hicks v. Hicks, supra; Simmons v. Simmons, supra.
First, we will analyze whether there exists sufficient evidence of abuse committed by Mr. Lewis in order to determine whether he can be considered a perpetrator of family violence under the Act. During the custody and visitation trial, Ms. Lewis set forth the broad-range of physical abuse that she alleges she suffered at the hands of Mr. Lewis during the course of the marriage. Ms. Lewis testified that about one month after she and Mr. Lewis were married, Mr. Lewis "took his fist and beat [Ms. Lewis] in the face real bad," causing her to obtain medical assistance at Bossier Medical Center, from which she was transported to LSU Medical Center. At trial, Ms. Lewis provided medical records from LSU Medical Center in order to substantiate her claim.
Also, Ms. Lewis testified that in either January or February of 1991, she recalled an episode that occurred a few months after the couple resumed living together after a separation period where Mr. Lewis hit her and kicked her in the side while wearing shoes. Still, Ms. Lewis testified that in November 1992, she went to the Bossier Medical Center emergency room with a broken nose and a broken cheekbone which, she alleges, resulted from Mr. Lewis admittedly kicking her in the face. Ms. Lewis also stated that, even though two surgical procedures were conducted to correct the nasal and orbit fractures, her problems with her cheekbones have never been corrected. At trial, Ms. Lewis also provided medical records from Bossier Medical Center regarding this incident.
Moreover, Ms. Lewis testified that in October 1996, Mr. Lewis used his fist to hit her in the head "a few times." Still, Ms. Lewis testified that in November 1996, Mr. Lewis pushed her, she fell, and she hit her head on the corner of the desk, causing a little gash and bleeding. Finally, Ms. Lewis testified that the children were *860 present during almost every one of these violent episodes.
At trial, Linda Lowery, Ms. Lewis' mother, testified that around Thanksgiving about six years ago, while Mr. Lewis and Ms. Lewis were married, she witnessed Mr. Lewis hitting Ms. Lewis with a Coke can. Ms. Lowery testified that during this incident, she recalled the kids "screaming" and Mr. Lewis telling Ms. Lewis that he would "beat her F'ing brains out in front of her mother...."
In addition, Mr. Lewis admitted at trial that he was abusive to Ms. Lewis on more than one occasion:
1) Mr. Lewis admitted that in August 1989, he beat Ms. Lewis with his fist so severely that she had to go to the hospital;
2) Mr. Lewis admitted that in November 1992, he beat Ms. Lewis with his fist so severely that he broke her nose, and he admitted that he was subsequently arrested, on this same occasion, for assault and battery of Ms. Lewis.
We will also note that during the trial, the trial judge made the following statement regarding Mr. Lewis' alleged abusive conduct, in response to the issue of admitting medical records into evidence:
Let me tell you what the bottom line is here, counsel. He beat her up. Okay, I accept that. But I don't need all this medical evidence for that ... He beat her up. I'm convinced of that. So let's press on to something else ...
Based on the record and upon review of the totality of the circumstances, we are convinced that Mr. Lewis has a history of perpetrating family violence, mandating application of La. R.S. 9:361-9:369. Even if we disregarded the disputed testimony offered by Ms. Lewis and Ms. Lowery, we still believe that there is sufficient undisputed evidence to establish that a history of family violence exists based upon Mr. Lewis' own admissions that he severely abused Ms. Lewis.
As well, we distinguish the facts of this case from our decision in Simmons v. Simmons, supra. In the Simmons case, we held that the provisions of La. R.S. 9:361-9:369 did not apply because, according to the record, only one isolated incident of violence on the part of the husband was uncontroverted. See Simmons v. Simmons, supra. In that case, we explained that a single past act of "family violence" is insufficient to mandate application of La. R.S. 9:361-9:369. See Simmons v. Simmons, supra.
By contrast, in this case, the evidence shows multiple instances of uncontroverted violent acts inflicted by Mr. Lewis upon Ms. Lewis during the marital relationship. Ms. Lewis has proved, by a preponderance of the evidence, that Mr. Lewis committed at least one act of violence against her, resulting in a serious injury-the beatings that resulted in her hospitalization and her broken nose. Moreover, these acts of violence were not disputed, as Mr. Lewis admitted to their occurrence. The Act only requires one serious act of violence resulting in serious injury, or simply, more than one act of violence to establish a history of violence and to create a rebuttable presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. See Hicks v. Hicks, supra. Mr. Lewis failed to rebut this presumption.
As such, we find that the trial court committed reversible legal error in failing to apply the provisions of La. R.S. 9:361-9:369 to the facts in this case. See Hicks v. Hicks, supra; Simmons v. Simmons, supra. We will conduct a de novo review of the record and render judgment on the merits.

Post-Separation Family Violence Relief Act
By assignment of error, Ms. Lewis contends that by failing to apply the provisions of La. R.S. 9:361-9:369, the trial court erred in: (1) failing to award sole custody of the children to Ms. Lewis; (2) *861 failing to order supervised visitation for Mr. Lewis until such time that he completed a treatment program for family violence perpetrators; and (3) failing to assess all costs and attorney's fees against Mr. Lewis.
The relevant provisions of La. R.S. 9:364 state:
B. If the court finds that both parents have a history of perpetrating family violence, custody shall be awarded solely to the parent who is less likely to continue to perpetrate family violence. In such a case, the court shall mandate completion of a treatment program by the custodial parent. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court.
C. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent, conditioned upon that parent's participation in and completion of a treatment program. Unsupervised visitation shall be allowed only if it is shown by a preponderance of the evidence that the violent parent has completed a treatment program, is not abusing alcohol and psychoactive drugs, and poses no danger to the child, and that such visitation is in the child's best interest.
Turning to the facts in this case, it is clear from the record that both Mr. Lewis and Ms. Lewis have committed physical violence against each other. Indeed, the trial court stated:
I think these parties in the past, both Mr. and Mrs. Lewis, both the father and the mother, have gotten into difficulties and very strong arguments and-and there's been some physical contact between them.
As we have stated, we firmly believe that Mr. Lewis committed sufficient acts of violence so as to trigger the application of La. R.S. 9:361-9:369. However, we consider it necessary to analyze the facts of this case so as to determine whether Ms. Lewis can also be considered to have a "history of perpetrating family violence" thereby triggering application of La. R.S. 9:364(B). La. R.S. 9:362(3) states:
"Family violence" includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children. Family violence does not include reasonable acts of self-defense utilized by one parent to protect himself or herself or a child in the family from the family violence of the other parent.
At trial, Mr. Lewis testified that in 1989, he and Ms. Lewis were driving to a fraternity party together. Mr. Lewis stated that he was driving the vehicle and Ms. Lewis was a passenger in the backseat. During this incident, Mr. Lewis claims that he and Ms. Lewis were engaged in an argument and Ms. Lewis attempted to punch him and, instead of hitting him, she punched the back of the seat, breaking her finger. At trial, Ms. Lewis did not admit that she attempted to punch Mr. Lewis. However, she did admit that she pushed on the seat, which caused her finger to break.
Also, Mr. Lewis testified that again in 1989, Ms. Lewis hit him on the head with a frying pan. However, Ms. Lewis denied this allegation at trial. Still, Mr. Lewis testified that in 1993, Ms. Lewis pulled a gun on him and tried to shoot him during a disagreement over whether the children should be forced to eat their spinach. Mr. Lewis stated that Ms. Lewis called the Bossier Police Department and officers came out to the house and, according to Mr. Lewis, they lectured Ms. Lewis on handgun control. However, Ms. Lewis *862 testified that she has never attacked Mr. Lewis with a gun.
Moreover, Mr. Lewis testified that in 1996, while the parties were separated, and Mr. Lewis was on crutches as a result of an automobile accident, Ms. Lewis attacked him. While Ms. Lewis alleges that she did not "attack" Mr. Lewis, she admits that she did hit him on that occasion. Finally, Mr. Lewis testified that again in 1996, while the parties were separated, Ms. Lewis punched through the screen and through a plate glass window of Mr. Lewis' father's house in Benton. According to Ms. Lewis, she merely "tapped on the window" with her fist and the window broke.
Based upon our review of the record, we do not find sufficient undisputed acts of violence on the part of Ms. Lewis so as to trigger application of La. R.S. 9:364(B). Ms. Lewis refuted almost every act of violence that Mr. Lewis alleged she committed. Although Ms. Lewis admitted that she did hit Mr. Lewis on one occasion, and that she broke a plate glass window, these acts, alone, are not sufficient to establish Ms. Lewis as a "perpetrator of family violence." As such, La. R.S. 9:364(C) is the applicable law under these facts.
The Post-Separation Family Violence Relief Act, La. R.S. 9:361-9:369, is clearly applicable in this case. The trial court committed reversible legal error by failing to apply its provisions. Furthermore, aside from the uncontroverted testimony that Mr. Lewis committed multiple acts of violence against Ms. Lewis during the marital relationship, the record also reveals that Mr. Lewis has a history of alcohol abuse. Based upon our de novo review of the facts in this case, we hereby reverse the decision of the trial court as to the child custody issue. According to La. R.S. 9:364(C), we award custody of the two children to Ms. Lewis and order that all visitations by Mr. Lewis shall be under supervised conditions until he can prove to the trial court that he has satisfied all of the requirements of the Act.
However, we award custody of the children to Ms. Lewis with certain conditions. The trial court found, and we agree that Ms. Lewis would benefit from parenting classes. As such, we hereby remand this case to the trial court with instructions that the trial court set up a custody plan not inconsistent with La. R.S. 9:361-9:369 and this opinion. The plan shall require both parents to participate in and complete parenting classes.

CONCLUSION
For the reasons just discussed, we hereby reverse the child custody decision of the trial court, and remand with instructions. Pursuant to La. R.S. 9:367, all court costs and attorney's fees associated with this appeal are assessed to the appellee.[1]
REVERSED AND REMANDED WITH INSTRUCTIONS.

APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, STEWART, GASKINS, and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] La. R.S. 9:367 states:

In any family violence case, all court costs, attorney fees, evaluation fees, and expert witness fees incurred in furtherance of this Part shall be paid by the perpetrator of the family violence, including all costs of medical and psychological care for the abused spouse, or for any of the children, necessitated by the family violence.