NORRIS, Chief Judge.
The father, Richard Jarrell, appeals a judgment ordering him to pay attorney fees incurred by his ex-wife, Earlene Lea-daman, pursuant to the Post Separation Family Violence Relief Act (“the Act”), La. R.S. 9:361-369. Richard contends that because he obtained a judgment finding that he successfully completed a treatment program under the Act and received unsupervised visitation, he should not be liable for Earlene’s expenses in unsuccessfully opposing his petition. For the reasons expressed, we affirm.

Factual and 'procedural background

Richard and Earlene were married in 1987. Their son, ZRJ, was born in early 1992. The couple physically separated in April 1994, at which time Earlene filed suit for an Art. 102 divorce. The parties received joint custody of ZRJ, with Earlene being named the domiciliary parent. She obtained a judgment of divorce in 1995.
In March 1998 Earlene filed a motion for modification of custody and for supervised visitation. She claimed that circumstances had changed significantly, in that Richard had harassed, threatened and physically abused her. Earlene prayed for judgment declaring that Richard has a “history of perpetrating family violence,” under R.S. 9:364 A, and restricting him to supervised visitation, under R.S. 9:364 C.
After a two-day trial in March 1999, the District Court found that Richard was a perpetrator of family violence; granted Earlene the sole care and custody of ZRJ; awarded Richard visits supervised by a representative of Ark-La-Tex Investigations; and cast him with all costs and Earlene’s |gattorney fees of $10,241.90. The judgment concluded that supervised visitation “shall continue until Richard F. Jarrell has complied with the provisions as set forth in R.S. 9:361 et seq., particularly R.S. 9:364 C.” Neither side appealed this judgment.
In November 2000, Richard filed the instant “supplemental and amending petition” alleging that he successfully completed the treatment program for perpetrators of family violence prescribed by R.S. 9:364 C, and demanding joint custody of ZRJ or, alternatively, unsupervised visitation.[1]
*209 The matter was tried over two days in April and May 2001; various witnesses discussed and debated the anger management program that was designed for Richard by Jean Cason, a Licensed Professional Counselor connected with Dr. Paul Ware, a local psychiatrist. By judgment on rule, the court found that Richard “participated in and completed a treatment program, a course of evaluation and psychotherapy designed specifically for him as a perpetrator of family violence” and otherwise satisfied R.S. 9:364 C. The court therefore restored Richard’s normal visitation, with a psychologist to devise an incremental schedule of visits.
At the end of trial, Earlene’s counsel orally requested an attorney fee pursuant to R.S. 9:367; Richard’s counsel did not object. In an additional hearing in June 2001, she claimed an attorney fee of $9,486.94, based on a statement of over 44 hours at $215 an hour. At this time Richard protested paying Earlene’s attorney fees after successfully winning unsupervised | ¡¡visitation. The court found that Earlene had the legal right to test whether Mrs. Cason’s family violence treatment program was legally sufficient, and whether Richard successfully completed.it and otherwise satisfied the requirements of the Act. Further, regardless of whether Earlene formally prayed for attorney fees, R.S. 9:367 clearly required that “all court costs [and] attorney fees * * * incurred in furtherance of this Part shall be paid by the perpetrator of the family violence.” Finding that all the claimed attorney fees were in furtherance of the Act, the court awarded the amount prayed for, together with legal interest from date of judgment.
Richard appeals this judgment.

Discussion

By three assignments of error, Richard contests the award of attorney fees and interest. First he argues that Earlene filed no pleading seeking this relief, so she is precluded from receiving it. Second he asserts that Earlene was unsuccessful in opposing his petition to terminate supervised visitation, and the unsuccessful party generally does not get attorney fees. See, e.g., Hernandez v. Hernandez, 99-1914 (La.App. 3 Cir. 5/3/00), 763 So.2d 36 (paternity action), and Bruner v. Bruner, 373 So.2d 971 (La.App. 2 Cir.1979) (child support). He adds that Earlene’s opposition to his petition was not “in furtherance of’ the Act, so R.S. 9:367 does not apply. Finally, he urges that even if attorney fees are warranted, they should be for only a “reasonable” sum, discounting fees incurred to raise meritless defenses.
The issue posed by Richard’s second assignment, whether § 367 permits the assessment of attorney fees against a perpetrator of family Rviolence who prevailed in obtaining unsupervised visitation, appears to be res nova. As a general rule, attorney fees are not allowed in Louisiana except where authorized by statute or provided for by contract. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382.
The scope of § 367 is informed by various sources. First is the overall structure of the Act. Its purpose is to prevent or reduce family violence and domestic abuse in the exercise of child custody and visitation, and to protect the victims of such abuse. La. R.S. 9:361. The Act creates a “presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children.” R.S. 9:364 A. If a parent is found to have such a history, “the court shall allow only supervised child visitation with the parent, conditioned upon that parent’s participation in and completion of a treatment program.” R.S. 9:364 C. A treatment program is defined as “a course of evaluation and psychotherapy designed *210 specifically for perpetrators of family violence, and conducted by licensed mental health professionals.” R.S. 9:362(7). Section 364 C provides for the resumption of unsupervised visitation:
Unsupervised visitation shall be allowed only if it is shown by a preponderance of the evidence that the violent parent has completed a treatment program, is not abusing alcohol and psychoactive drugs, and poses no danger to the child, and that such visitation is in the child’s best interest.
Attorney fees and costs are regulated by R.S. 9:367:
In any family violence case, all court costs, attorney fees, evaluation fees, and expert witness fees incurred in furtherance of this Part shall be paid by the perpetrator of the family violence, including all costs of medical and psychological care for the abused spouse, or for any of the children, necessitated by the family violence.
|KWe have also examined the recent case of D.O.H. v. T.L.H., 01-174 (La.App. 3 Cir. 10/31/01), 799 So.2d 714. The majority in D.O.H. noted that although R.S. 9:362(7) purports to define a treatment program, there is no standard or consensus in the mental health community as to what sort of program is best for perpetrators of family violence.[2] “[T]here may be a number of psychotherapy programs available for spousal abusers, and there may be differences amongst both lay and professional opinions as to which is most effective.” The judicial function is not to designate the best program, but to decide whether the particular program ordered by the trial court “met the statutory standard.” The majority concluded that the program offered to the father did indeed meet the standard of R.S. 9:362(7). The dissenting judge cited extensive medical and other authority to the contrary.
Finally, we have reviewed the case of State in Interest of A.C., 93-1125 (La.1/27/94), 643 So.2d 719, which rejected a claim that R.S. 9:367 is unconstitutionally vague. In A.C., a juvenile court had thrown out § 367 because it placed no “cap” on costs and fees that could be assessed against the perpetrator of family violence. The Supreme Court upheld the statute, focusing mainly on the requirement that costs be “necessitated by” the family violence. In fact, the trial judge has the discretion to reject certain costs “due to their frivolity and/or excessiveness.”
As noted, Richard filed a petition for unsupervised visitation and obtained the relief sought. We recognize that the right to recover attorney fees is often stated in favor of the “successful party.” Sharbono v. Steve Lang Loggers, supra (concurrence of Lemmon, J.); Frank L. Beier Radio Inc. v. Black Gold Marine Inc., 449 So.2d 1014 (La.1984). However, the court previously found Richard to have a history of family violence, and § 367 directs the perpetrator to pay attorney fees “incurred in furtherance of this Part.” This phrase obviously refers to actions which serve the stated purpose of the Act, protecting children from family violence during the exercise of custody or visitation. In our view, this purpose is promoted or furthered by actions to determine whether a treatment program is sufficient under the Act, and whether the perpetrator has successfully completed it so he poses no further danger to the child. Attorney fees incurred to test these crucial issues fall under the mandate of § 367, and are the obligation of the perpetrator even if incurred by anoth *211 er party. The District Court did not err in reaching this conclusion.
According to the compromise agreement, any future actions by Richard to modify custody will be by new pleadings and Earlene may raise defenses based on Bergeron v. Bergeron, supra. Thus we need not address Richard’s suggestion that he will owe attorney fees under the Act every time he successfully seeks to expand visitation or custody. We would only note that the trial court’s discretion in assessing attorney fees, recognized in State in Interest of A.C., supra, should prevent any torrent of frivolous or excessive claims. For these reasons, Richard’s second assignment of error lacks merit.
By his first assignment, Richard asserts the District Court erred in awarding attorney fees and legal interest because Earlene did not |7specifically pray for these in any pleading.[3] In brief he cites older Supreme Court cases on the issue of legal interest.[4] He concedes that this court has awarded interest though not prayed for, but urges that the First and Third Circuits have denied it.
Except in default judgments, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, “even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.” La. C.C.P. art. 862; T.L. James & Co. v. Kenner Landing Inc., 562 So.2d 914 (La.1990). Section 367 plainly mandates that the perpetrator pay attorney fees incurred in furtherance of the Act; the District Court was not plainly wrong to impose them even without a specific prayer for relief. Moreover, this court has awarded legal interest even when not specifically requested. McConathy v. McConathy, 25,542 (La.App. 2 Cir. 2/23/94), 632 So.2d 1200, 89 Ed. Law Rep. 1257, writs denied 94,0750 (La.5/6/94), 637 So.2d 1052. The judgment is not in error; the older cases cited in brief mostly predate art. 862 and do not alter this conclusion.[5] Richard’s first assignment of error lacks merit.
By his final assignment Richard contends that even if attorney fees were warranted, the court erred in awarding the full amount charged. | sAlthough the Act is not specific, the Supreme Court has held that only reasonable attorney fees are allowed under § 367. State in Interest of A.C., supra. However, neither at the hearing in the District Court nor in brief to this court has he contested Earlene’s counsel’s hourly rate or identified any particular charges as unrelated to the issue of visitation. From this record it is apparent that testing the sufficiency of the treatment plan was a novel and difficult issue of law, and that both sides’ counsel were experienced and capable. See Rules of Prof. Conduct, 1.5(a); State v. Williamson, *212 597 So.2d 489 (La.1992). Under the circumstances, the District Court did not abuse its discretion in awarding the $9,486.94 billed by Earlene’s lawyer. Richard’s third assignment therefore lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed. Costs of appeal are assessed to the appellant, Richard F. Jar-rell.
AFFIRMED.

. Earlene filed an exception of no cause of action, urging that Richard failed to allege the heavy burden of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). The District Court denied the exception; this ruling led Earlene to file the initial appeal in the instant matter, and Richard in turn filed a motion to dismiss her appeal. At oral argument on January 22, 2002, counsel announced they had reached a compromise whereby Earlene's appeal and Richard's motion to dismiss were moot.

. At the instant trial, both Ms. Cason and Mr. Carlson, another expert witness, agreed that the precise content of a treatment program may vary greatly from case to case.

. As noted earlier, she orally requested it at the close of trial on May 1, 2001.

. Dennis v. Huber, 151 La. 589, 92 So. 126 (1922); Merchants’ & Farmers' Bank & Tr. Co. v. Hammond Motors Co., 164 La. 57, 113 So. 763 (1927); Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742 (1928); Crowe v. Equitable Life Assur. Soc. of U.S., 179 La. 444, 154 So. 52 (1934); Hamberlin v. Tangipahoa Parish School Bd., 210 La. 483, 27 So.2d 307 (1946); Succession of Mulqueeny, 253 La. 595, 218 So.2d 607 (1969).

.Richard cites Deposit Guaranty Nat'l Bank v. Central La. Grain Co-Op. Inc., 98-1976 (La.App. 3 Cir. 5/5/99), 737 So.2d 167, writ denied 99-1582 (La.9/17/99), 747 So.2d 564, for the rule that “the Third Circuit has denied an award for legal interest based upon the prevailing party’s failure to pray therefor.” However, the opinion actually awards interest although not prayed for.