| | | |
|---|---|---|
| **NARQUIS BARAK** | * | **NO. 2021-CA-0756** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **ANTOINE MICHELE SAACKS, III** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |

* * * * * * *

<div style="display:flex; justify-content:space-between;">

**CONSOLIDATED WITH:**

**NARQUIS BARAK**

**VERSUS**

**ANTOINE MICHELE SAACKS, III**

</div>

**CONSOLIDATED WITH:**

**NO. 2021-CA-0757**

**CONSOLIDATED WITH:**

**NARQUIS BARAK**

**VERSUS**

**ANTOINE MICHELE SAACKS, III**

**CONSOLIDATED WITH:**

**NO. 2021-CA-0758**

**CONSOLIDATED WITH:**

**NARQUIS BARAK**

**VERSUS**

**ANTOINE MICHELE SAACKS, III**

**CONSOLIDATED WITH:**

**NO. 2021-CA-0759**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2007-02556, DIVISION "H"
Honorable Monique E. Barial, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge Dale N. Atkins)

LOBRANO, J., CONCURS IN PART AND DISSENTS IN PART.

Richard Lynn Ducote
Victoria McIntyre
318 East Boston Street, 2nd Floor
Covington, LA 70433


COUNSEL FOR PLAINTIFF/APPELLANT, Narquis Barak


Andrew Lewis Kramer
Attorney at Law
201 St. Charles Avenue, Suite 2504
New Orleans, LA 70170


COUNSEL FOR DEFENDANT/APPELLEE, Antoine Michele Saacks, III

**VACATED IN PART AND REMANDED WITH INSTRUCTIONS;**
**AFFIRMED IN PART**
**October 12, 2022**

DNA

PAB

This is a child custody and visitation case. Appellant, Narquis Barak ("Ms. Barak"), who is the mother of the children, seeks review of the trial court's July 30, 2021 judgment, which awarded "unsupervised physical custody periods" to Appellee, Antoine Michele Saacks, III ("Dr. Saacks"),[1] who is the father of the children, contingent upon his passing a drug test and upon the approval of a reunification therapist or the trial court.[2] In the July 30, 2021 judgment, the trial court also found Ms. Barak in criminal contempt. For the following reasons, we vacate in part and remand with instructions, and we affirm in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In the subject judgment, the trial court summarized the relevant factual and procedural background of this protracted matter as follows:

---

[1] According to the record, Dr. Saacks is a veterinarian.

[2] As discussed more fully throughout the Opinion, the condition(s) precedent to "unsupervised physical custody periods" differed regarding the parties' two daughters. That is, the July 30, 2021 judgment awarded "unsupervised physical custody periods" with one of the parties' daughters, L.S., contingent upon Dr. Saacks passing a drug test. The judgment awarded Dr. Saacks "unsupervised physical custody periods" with the parties' other daughter, S.S., contingent upon his passing a drug test *and* upon approval of a reunification therapist or the trial court.

1

This matter first came before the Court on June 17, 2019 for hearing on various motions for contempt, modification of custody and modification of custody pursuant to the Post[-]Separation Family Violence Relief Act, as well as ancillary matters filed by both parties. The hearing was not completed during the allotted time and was held open and re-scheduled for completion. Based on the ongoing pandemic, the schedules of the parties, and the schedule of the Court, the proceedings were held over several days over the course of almost two years. . . . Testimony was completed and all evidence was submitted on the remaining matters at the close of the hearing on May 25, 2021. . . .

[Ms.] Barak and [Dr. Saacks] were in a romantic relationship in 2004 and resided together from April 2005 through April 2008. Of their relationship two daughters were born, [S.S.] (d.o.b. 12/30/2005) and [L.S.] (d.o.b. 05/09/2007).[3] In 20[1]8, Ms. Barak filed a Petition for an Order of Protection from Abuse against Dr. Saacks. By consent of the parties, the petition was dismissed. The parties entered into a consent agreement whereby Dr. Saacks was to complete six months of therapy to address anger management and domestic abuse issues. The parties were to have joint custody of the children with Ms. Barak designated as the domiciliary parent. The physical custody schedule has been modified by the court since the consent judgment was entered into the record. Dr. Saacks exercises physical custody periods every Tuesday and on alternating weekends. While the parties' youngest daughter, [L.S.,] has continued to spend time with both parents according to the custody judgment, [S.S.] has not.

Ms. Barak alleges multiple incidents of domestic violence between she and Dr. Saacks during the course of their relationship beginning in February[] 2006. She testified to the following incidents in chronological order: he threw her off a bed and hit her multiple times with a water bottle; he slammed her against the tiles in the bathroom and started choking her; he pulled her from a room by her hair; while pregnant, he shoved her, grabbed her by the neck, and cursed her; he grabbed her arm and twisted it until she dropped her phone; slammed a door on her leg and slammed her head against a wall. She alleges that such incidents continued through the time of their separation. She further asserts that these alleged behaviors of Dr. Saacks continued into his subsequent relationship with Eleanor Dymond. Most recently, Ms. Barak alleges that during a physical custody period with their father in 2017, their eldest daughter witnessed an incident of domestic violence between Dr. Saacks and Ms. Dymond, his girlfriend with whom he lives. As a result of this

---

[3] This Opinion will use the initials of the minor children to protect their identity. *See* Uniform Rules, Louisiana Courts of Appeal, Rules 5-1 and 5-2. *See also Council v. Livingston*, 2019-1049, p. 1 (La. App. 4 Cir. 3/13/20), ___ So.3d ___, ___, 2020 WL 1231392, at *1 n.1.

incident, both Dr. Saacks and Ms. Dymond filed petitions for protection from abuse against each other.

Ms. Barak asserts that Dr. Saacks: has a history of physical and psychological abuse of female partners; has failed to abide by the existing custody schedule; violates the co-parenting guidelines; and that he attempts to alienate the girls from her. She seeks a strict application of the Post[-]Separation Family Violence Relief Act.

. . . .

Dr. Saacks avers that Ms. Barak is in contempt of Court for[] her failure to exchange the parties' oldest daughter, [S.S.,] for physical custody periods with her father . . . .

The Court conducted multiple Watermeier hearings with the children now 15 and 14 years of age.[4] Each child expressed their desires about the physical custody schedules with their parents. Both children acknowledge that they love each of their parents. [S.S.]'s relationship with her father is strained at best. Dr. Saacks and [S.S.] have had little to no contact with each other over the last two years. The unrefuted testimony before the Court is that Ms. Barak brings [S.S.] to the exchanges but she will not get out of the car for her physical custody periods with her father. Ms. Barak indicated that initially she did place restrictions on [S.S.] when she refused to go to her father's but eventually stopped. Based on the testimony and evidence before the court the strain between father and daughter seems to have occurred after the Court interviewed the child following the incident between Dr. Saacks and Ms. Dymond.

Conversely, [L.S.] appears to have a strong relationship with her father. They share several interests including animals and cooking. She has also formed a bond with her younger half siblings and enjoys spending time with them and her father.

As evidenced by the above excerpt, the trial court has conducted various

hearings in this matter since its inception. Of import to this appeal is a portion of a

---

⁴ This Court has explained that a "Watermeier hearing" is one held "in chambers, outside the presence of the parents, but in the presence of their attorneys, with a record of the hearing to be made by the court reporter, to inquire as to the competency of a child to testify as to custody." *Patterson v. Charles*, 2019-0333, p. 20 (La. App. 4 Cir. 9/11/19), 282 So.3d 1075, 1089 (quoting *S.L.B. v. C.E.B.*, 2017-0978, 0979, 0980, p. 13 (La. App. 4 Cir. 7/27/18), 252 So.3d 950, 960 n.12). *See also Watermeier v. Watermeier*, 462 So.2d 1272 (La. App. 5 Cir. 1985).

January 29, 2020 hearing conducted by the trial court. At the hearing, the following colloquy occurred concerning an exhibit introduced by Dr. Saacks:

Q. Dr. Saacks, what is Exhibit A[?]

A. A Certificate of Completion for Domestic Violence and Batterer Intervention.

Q. What's the date on it?

A. July 12, 2018.

. . . .

A. For 26 hours.

Dr. Saacks discusses this "Certificate of Completion for Domestic Violence and Batterer Intervention" ("Certificate") in his Appellee Brief, and Ms. Barak addresses it in her Appellant Reply Brief. The importance of the Certificate will be explained more fully throughout this Opinion.

After reciting the factual background and procedural history of this matter, the trial court then rendered the following in the July 30, 2021 judgment as pertinent to this appeal:

**IT IS HEREBY [ORDERED,] ADJUDGED, AND DECREED** that Antoine Saacks is found to have a history of family violence.

. . . .

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Narquis Barak's Motion for Sole Custody pursuant to the Post[-]Separation Family Violence Relief Act is **GRANTED**.

. . . .

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Ms. Barak's Motion for Supervised Visitation pursuant to La. R.S. 9:341 is **GRANTED in part and DENIED in part**. Antoine Saacks, III shall exercise only supervised physical custody periods with [L.S.] until he submits to a 10 panel hair follicle drug test. Should Dr. Saacks test positive (a failed test) as to any of

the panels of the test, then he shall continue to exercise only supervised physical custody periods. Should Dr. Saacks test negative (a passed test) to all of the panels of the test, then he shall have unsupervised physical custody periods with [L.S.] according to the current schedule in place. The Court finds that to prevent [L.S.] from spending time with her father would be harmful to her.

. . . .

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Antoine Saacks, III and [S.S.] shall participate in reunification therapy with Betsey Backe, LCSW (504-6134257) or a therapist that has been approved in advance by this Court. Given the current strain in their relationship and the unrefuted testimony as to her current mental state, physical custody periods between Dr. Saacks and [S.S.] will not resume until either the reunification therapist indicates that it is warranted or the Court grants approval for the resumption of the visits. Continuation of Dr. Saacks' unsupervised physical custody periods with [S.S.] shall be subject to him passing the ten panel hair follicle drug test.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Antoine Saacks' Motion for Contempt for Narquis Barak's failure to exchange both children for their physical custody periods with Dr. Saacks is **GRANTED** in part and **DENIED** in part. The Court notes that there have been times when the children express that they do not want to go to their father's and Ms. Barak will let them stay at her home. Even though the children may have been crying or upset at these times, it is not a justifiable cause for failing to comply with the schedule. More recently, [S.S.] began to experience more severe reactions and started seeing a therapist who advised that it would be harmful for her father to exercise time with [S.S.]. The Court finds Ms. Barak's reliance on the recommendation of [S.S.]'s therapist to be a justifiable cause for not complying with the physical custody schedule.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that for her contempt Ms. Barak is ordered to pay the court costs associated with the filing of the Motion for Contempt. She is further ordered to perform eight hours of community service at the New Orleans Mission. The performance of the hours is suspended for six months due to the current spike in COVID-19 cases.

Ms. Barak's appeal of the July 30, 2021 judgment timely follows.

## ASSIGNMENTS OF ERROR

Ms. Barak asserts three assignments of error regarding the trial court's July 30, 2021 judgment:

> 1) After specifically finding that Dr. Saacks had a history of perpetrating family violence and awarding Ms. Barak sole custody of both children under the Post-Separation Family Violence Relief Act, [La.] R.S. 9:361-367, the trial court clearly erred as a matter of law and manifestly abused its discretion in awarding Dr. Saacks unsupervised "custody periods" with the parties' daughter [L.S.] merely upon his passing a drug panel test, in clear violation of the mandates of [La.] R.S. 9:364 and 9:341.

> 2) After specifically finding that Dr. Saacks had a history of perpetrating family violence and awarding Ms. Barak sole custody of both children under the Post-Separation Family Violence Relief Act, [La.] R.S. 9:361-367, the trial court clearly erred as a matter of law and manifestly abused its discretion in delegating to a "reunification therapist" the decision as to when "custody periods" would resume unsupervised between Dr. Saacks and the parties' daughter [S.S.], and in allowing such unsupervised "custody periods" to continue merely upon Dr. Saacks passing a drug test, in clearly violation of the mandates of [La.] R.S. 9:364 and 9:341.

> 3) The trial court clearly erred in finding Ms. Barak in criminal contempt of court and sentencing her to eight (8) hours of community service under the circumstances presented here, without clearly "reciting the facts constituting the . . . contempt," as is required by [La.] C.C.P. art. 225(B).

We turn our consideration to the merits.

## DISCUSSION

### I. *ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO: CUSTODY AND VISITATION UNDER THE POST-SEPARATION FAMILY VIOLENCE ACT*

In her first assignment of error, Ms. Barak asserts that the trial court erred, manifestly abused its discretion, and violated the mandates of the Post-Separation Family Violence Relief Act by awarding "unsupervised 'custody periods'" with L.S. contingent upon Dr. Saacks passing a drug test. In her second assignment of error, Ms. Barak contends that that the trial court erred, manifestly abused its

discretion, and violated the mandates of the Post-Separation Family Violence Relief Act by awarding "unsupervised 'custody periods'" with S.S. contingent upon Dr. Saacks passing a drug test and upon approval by a reunification therapist. Ms. Barak contends that these portions of the July 30, 2021 judgment constitute error in light of the trial court having found that Dr. Saacks has a history of family violence. Because we find that resolution of these assignments of error involves the same analysis, we will discuss them together.

Before we begin our analysis, we note that in the July 30, 2021 judgment the trial court awarded "unsupervised physical custody periods" contingent upon the aforementioned conditions being met despite having awarded Ms. Barak sole custody of the children pursuant to the Post-Separation Family Violence Act. Because the word "unsupervised" is typically used with reference to visitation rather than custody, it is unclear if the trial court intended to award custody or unsupervised visitation to Dr. Saacks upon those conditions being met. Therefore, our discussion will include an analysis of both custody and visitation.

## A.    Standard of Review

"Absent a legal error, a trial court's child-custody determination is reviewed under an abuse of discretion standard." *Council v. Livingston*, 2019-1049, p. 11 (La. App. 4 Cir. 3/13/20), ___ So.3d ___, ___, 2020 WL 1231392, at *5 (citing *Jaligam v. Pochampally*, 2016-0249, p. 5 (La. App. 4 Cir. 12/7/16), 206 So.3d 298, 302). Likewise, "[g]reat weight is given to the trial court's determination in matters of visitation, and the court's judgment will not be overturned unless a clear abuse of discretion is shown." *Main v. Main*, 2019-0503, p. 7 (La. App. 5 Cir. 2/19/20), 292 So.3d 135, 142 (citing *Zatzkis v. Zatzkis*, 632 So.2d 307, 320 (La. App. 4 Cir. 1993)). The discretion afforded the trial court is because "[i]n most child custody

7

cases, the trial court's rulings are based heavily on its factual findings." *Belway v. Thyssen*, 2018-0455, p. 4 (La. App. 4 Cir. 12/12/18), 318 So.3d 766, 771 (citing *Hanks v. Hanks*, 2013-1442, p. 8 (La. App. 4 Cir. 4/16/14), 140 So.3d 208, 214). *See also Garner v. Thomas*, 2008-1448, p. 9 (La. App. 4 Cir. 5/28/09), 13 So.3d 784, 789 (noting that "[i]n most child custody cases and, by analogy, in visitation cases, the trial court decisions are based heavily on factual findings" (citing *Palazzola v. Mire*, 2008-0075, p. 34 (La. App. 4 Cir. 1/7/09), 10 So.3d 748, 768)). However, in child custody and visitation matters as in other areas of the law, "[t]he application of statutes is a question of law[,]" and "[a]n appellate court reviews questions of law *de novo* to determine whether the trial court was legally correct or incorrect." *Durand v. Rose*, 2022-0300, p. 7 (La. App. 4 Cir. 9/15/22), ___ So.3d ___, ___, 2022 WL 4244409, at *4.

## B.    *Application of the Post-Separation Family Violence Relief Act*

"A child has a right to time with both parents." La. C.C. art. 136.1. As this Court has explained, "custody and visitation [are] always subject to modification . . . upon the appropriate showing and according to the best interests of the child." *LaGraize v. Filson*, 2014-1353, p. 21 (La. App. 4 Cir. 6/3/15), 171 So.3d 1047, 1057 (citing *Lawrence v. Lawrence*, 49,373, p. 7 (La. App. 2 Cir. 8/13/14), 147 So.3d 821, 826). In matters in which the Post-Separation Family Violence Relief Act applies though, the Act provides restrictions on a court's award of custody and unsupervised visitation. *See* La. R.S. 9:361-369. Moreover, when the Post-Separation Family Violence Relief Act applies, the trial court's failure to apply the provisions of the Act constitutes legal error. *Durand*, 2022-0300, pp. 7-8, ___ So.3d at ___, 2022 WL 4244409, at *4 (quoting *Lewis v. Lewis*, 34,031, pp. 3-4

8

(La. App. 2 Cir. 11/3/00), 771 So.2d 856, 859). *See also Hicks v. Hicks*, 1998-1527, p. 5 (La. App. 3 Cir. 5/19/99), 733 So.2d 1261, 1264.

The Post-Separation Family Violence Relief Act is codified at La. R.S. 9:361-369. "The provisions of the Post-Separation Family Violence Relief Act become operative if the court finds that there has been family violence and that there is a history of family violence." *Garcia v. Hernandez*, 2021-0338, p. 13 (La. App. 5 Cir. 4/11/22), 339 So.3d 61, 70 (citing *Nguyen v. Le*, 2007-0081, p. 4 (La. App. 5 Cir. 5/15/07), 960 So.2d 261, 263). *See also Dufresne v. Dufresne*, 2008-0215, 2008-0216, p. 8 (La. App. 5 Cir. 9/16/08), 992 So.2d 579, 585-86 (citing *Michelli v. Michelli*, 1993-2128, p. 6 (La. App. 1 Cir. 5/5/95), 655 So.2d 1342, 1346). The Post-Separation Family Violence Relief Act defines "family violence" as "physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children." La. R.S. 9:362(4).

In the matter *sub judice*, the trial court found in the July 30, 2021 judgment that Dr. Saacks had a history of family violence.[5] By the terms of the Post-Separation Family Violence Act, this finding triggered application of the Act to this matter. Because the application of statutes is a question of law, we conduct a *de novo* review to determine if the trial court correctly applied the Post-Separation Family Violence Act. *See Durand*, 2022-0300, p. 7, ___ So.3d at ___, 2022 WL 4244409, at *4.

---

[5] We note that Dr. Saacks does not dispute this finding in his Appellee Brief.

## C. *Custody and Visitation when the Post-Separation Family Violence Relief Act Applies*

Louisiana Revised Statutes 9:364, which is part of the Post-Separation Family Violence Relief Act, concerns custody and visitation in matters in which a court finds a history of family violence:

> A. There is created a presumption that no parent who has a history of perpetrating family violence, as defined in [La.] R.S. 9:362 . . . shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.
>
> B. The presumption shall be overcome only if the court finds all of the following by a preponderance of the evidence:
>
> (1) The perpetrating parent has successfully completed a court-monitored domestic abuse intervention program as defined in [La.] R.S. 9:362, or a treatment program designed for sexual abusers, after the last instance of abuse.
>
> (2) The perpetrating parent is not abusing alcohol or using illegal substances scheduled in [La.] R.S. 40:964.[6]
>
> (3) The best interest of the child or children, considering the factors listed in Civil Code Article 134,[7] requires the perpetrating parent's participation as a custodial parent because of the other parent's absence, mental illness, substance abuse, or other circumstance negatively affecting the child or children.
>
> . . . .
>
> E. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent pursuant to [La.] R.S. 9:341.

Regarding visitation after a finding of a history of family violence, La. R.S. 9:341 states, in pertinent part:

---

[6] Louisiana Revised Statutes 40:964 lists drugs classified in Schedules I, II, III, IV, and V.

[7] Louisiana Civil Code Article 134 is titled "[f]actors for determining child's best interest."

Whenever the court finds by a preponderance of the evidence that a parent has subjected any of his or her children or stepchildren to family violence, as defined in [La.] R.S. 9:362, or domestic abuse, as defined in [La.] R.S. 46:2132, has subjected any other household member, as defined in [La.] R.S. 46:2132, to a history of family violence as defined in [La.] R.S. 9:364(A) . . . , the court shall allow only supervised visitation between the abusive parent and the abused child or children until such parent proves by a preponderance of the evidence at a contradictory hearing that the abusive parent has successfully completed a court-monitored domestic abuse intervention program, as defined in [La.] R.S. 9:362, since the last incident of domestic violence or family abuse.

La. R.S. 9:341(A).

As the above excerpts demonstrate, the trial court must not grant a parent with a history of family violence either sole or joint custody or unsupervised visitation until the trial court finds by a preponderance of the evidence that the parent has completed a court-monitored domestic abuse intervention program. The Post-Separation Family Violence Act defines "court-monitored domestic abuse intervention program." It states:

(3) "Court-monitored domestic abuse intervention program" means a program, comprised of a minimum of twenty-six in-person sessions, that follows a model designed specifically for perpetrators of domestic abuse. The offender's progress in the program shall be monitored by the court. The provider of the program shall have all of the following:

(a) Experience in working directly with perpetrators and victims of domestic abuse.

(b) Experience in facilitating batterer intervention groups.

(c) Training in the causes and dynamics of domestic violence, characteristics of batterers, victim safety, and sensitivity to victims.

La. R.S. 9:362(3).

In the July 30, 2021 judgment, after finding that Dr. Saacks has a history of family violence, the trial court awarded "unsupervised physical custody periods" to Dr. Saacks with L.S. contingent upon his passing a drug panel test. The trial court

awarded "unsupervised physical custody periods" with S.S. contingent upon Dr. Saacks passing a drug panel test and upon approval of a reunification therapist or the trial court. Upon finding that Dr. Saacks has a history of family violence, the Post-Separation Family Violence Relief Act mandated that the trial court could not reinstate custody to Dr. Saacks until finding by a preponderance of the evidence that Dr. Saacks completed a court-monitored domestic abuse intervention program; that Dr. Saacks was not abusing alcohol or using illegal substances; and that the best interest of the child factors required Dr. Saacks' participation as a custodial parent. *See* La. R.S. 9:364. Additionally, the Post-Separation Family Violence Relief Act mandated that the trial court not reinstate unsupervised visitation until Dr. Saacks proved by a preponderance of the evidence at a contradictory hearing that he completed a court-monitored domestic abuse intervention program since the last incident of domestic violence or family abuse. *See* La. R.S. 9:364(E) and 9:341. The only portion of La. R.S. 9:364 that the trial court adhered to regarding a resumption of custody was conditioning Dr. Saacks' future time with the children upon the court receiving notice that Dr. Saacks passed a drug test per La. R.S. 9:364(2).The record does not demonstrate that the trial court found any of the other requirements of the Post-Separation Family Violence Relief Act to be met.

We note that in his brief to this Court, Dr. Saacks points to the Certificate as support for a finding that he completed a court-monitored domestic abuse intervention program. However, the record does not demonstrate that the trial court found by a preponderance of the evidence that Dr. Saacks completed a program that abided by the requirements outlined in the Post-Separation Family Violence Act. Namely, the record does not demonstrate that the course in which Dr. Saacks participated held in-person sessions; that the course followed a model designed

specifically for perpetrators of domestic abuse; that the trial court monitored Dr. Saacks' progress in the program; and that the provider of the course had (a) experience in working directly with perpetrators and victims of domestic abuse, (b) experience in facilitating batterer intervention groups, and (c) training in the causes and dynamics of domestic violence, characteristics of batterers, victim safety, and sensitivity to victims. *See* La. R.S. 9:362(3). Instead, the only information in the record about the Certificate is that it is dated July 12, 2018, and concerns a twenty-six hour course for "Domestic Violence and Batterer Intervention."

Additionally, the lack of information about the program Dr. Saacks completed and whether it complies with the definition of "[c]ourt-monitored domestic abuse intervention program" found in La. R.S. 9:362(3) prevents this Court from rendering a judgment on the merits so as to authorize unsupervised visitation to him. *Cf. Durand*, 2022-0300, pp. 7-9, ___ So.3d at ___, 2022 WL 4244409, at *4-5 (wherein the Post-Separation Family Violence Act applied and the record contained no information about the parent with a history of family violence having completed a court-monitored domestic abuse intervention program, this Court conducted a *de novo* review of the record and rendered judgment on the merits, ultimately reversing the trial court's award of joint custody and unsupervised visitation and rendering judgment awarding sole custody to the other parent).

In sum, this portion of the July 30, 2021 judgment constitutes legal error due to the trial court's failure to abide by the mandates of the Post-Separation Family Violence Relief Act. The lack of information about the course Dr. Saacks completed prevents us from rendering judgment on the merits under our *de novo* review. Thus, we vacate those portions of the July 30, 2021 judgment that provide

"unsupervised physical custody periods" to Dr. Saacks; and we remand this matter to the trial court with instructions to conduct a contradictory hearing within twenty days of the date of this Opinion and to follow the provisions of the Post-Separation Family Violence Relief Act.

## II.  COSTS

Louisiana Revised Statutes 9:367 provides that "[i]n any family violence case, all court costs, attorney fees, [and] costs of appeal . . . incurred in furtherance of [the Post-Separation Family Violence Relief Act] shall be paid by the perpetrator of the family violence . . . . " *See also Lewis*, 34,031, p. 10, 771 So.2d at 862. Louisiana Code of Civil Procedure Article 862 states that a "judgment shall grant the relief to which the party in whose favor it is rendered is entitled . . . ." Interpreting La. R.S. 9:367 and La. C.C.P. art. 862, the Louisiana Second Circuit Court of Appeal has explained that attorney fees and costs should be awarded in a matter in which the Post-Separation Family Violence Relief Act applies because La. R.S. 9:367 "plainly mandates that the perpetrator pay attorney fees [and costs] incurred in furtherance of the Act . . . ." *Jarrell v. Jarrell*, 35,837, p. 7 (La. App. 2 Cir. 2/27/02), 811 So.2d 207, 211.

In this matter, the trial court found that Dr. Saacks has a history of family violence, thus implicating the Post-Separation Family Violence Relief Act. The Post-Separation Family Violence Relief Act and the jurisprudence interpreting it demonstrate that Ms. Barak is entitled to attorney fees and costs. *See* La. R.S. 9:367; *Jarrell*, 35,837, p. 7, 811 So.2d at 211. Therefore, because the trial court found him to be the perpetrator of family violence, all court costs and attorney fees associated with this appeal are assessed against Dr. Saacks. *See id.*

### III. ASSIGNMENT OF ERROR NUMBER THREE: CONTEMPT

In her third and final assignment of error, Ms. Barak contends that the trial court erred in finding her in contempt of court and sentencing her to eight hours of community service without reciting the facts constituting the contempt as required by La. C.C.P. art. 225(B). She also argues, in part, that the trial court erred because "[a] parent of a very distraught child need not physically force her to participate in the visitation and contact at issue, when the child vehemently and hysterically protests, as she has a complete defense to any contempt adjudication." In the July 30, 2021 judgment, the trial court granted in part and denied in part a Motion for Contempt filed by Dr. Saacks for Ms. Barak's failure to exchange the parties' daughters for their physical custody periods with Dr. Saacks. In the portion of the July 30, 2021 judgment discussing its finding, the trial court explained that "there have been times when the children express that they do not want to go to [Dr. Saacks' home] and Ms. Barak let them stay at her home." The trial court further noted that "[e]ven though the children may have been crying or upset at these times, it is not a justifiable cause for failing to comply with the [custody] schedule." We begin our analysis of this assignment of error by turning to the standard of review applicable to a finding of contempt.

### A. Standard of Review

In discussing the standard of review regarding a finding of contempt, this Court has explained that "[t]he trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order and the court's decision should be reversed only when the appellate court discerns an abuse of that discretion." *Macquet v. Macquet*, 2019-1097, p. 2 (La. App. 4 Cir. 10/7/20), 306 So.3d 498, 499 (quoting *Quinn v. Palmer*, 2019-1009, p.

13 (La. App. 4 Cir. 3/25/20), 294 So.3d 541, 549). Next, we consider the types of contempt.

## B.     *Contempt Principles*

"A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221. A contempt of court can be direct or constructive. *Id.* "A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." La. C.C.P. art. 222. "A constructive contempt of court is any contempt other than a direct one." La. C.C.P. art. 224.

Louisiana Code of Civil Procedure Article 225(B) outlines the procedure for punishing for constructive contempt and provides that "[i]f the person charged with contempt is found guilty the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed." Despite the great discretion accorded to the trial court regarding a contempt finding, "[t]he provisions of [La.] C.C.P. art. 225(B) are mandatory and must be strictly construed[,]" such that "[t]he failure of a trial court to recite facts constituting contempt mandates a reversal of a judgment of contempt." *Davidson v. Castillo*, 52,727, p. 14 (La. App. 2 Cir. 8/14/19), 276 So.3d 1157, 1166 (citing *Havener v. Havener*, 29,785, p. 8 (La. App. 2 Cir. 8/20/97), 700 So.2d 533, 538; *Brown v. Brown*, 493 So.2d 671, 673 (La. App. 2 Cir. 1986)).

For example in *LeBlanc v. LeBlanc*, the Louisiana Third Circuit Court of Appeal similarly reviewed a child custody matter in which the mother argued that

the trial court had failed to recite the facts constituting contempt as mandated by La. C.C.P. art. 225(B) and *Havener*. 2006-1307, p. 10 (La. App. 3 Cir. 3/7/07), 953 So.2d 115, 123. The Louisiana Third Circuit Court of Appeal concluded that the following language in the subject judgment "clearly" constituted a recitation of the facts constituting contempt: "LAURA LEONARD RITCHIE has not required RYAN LEBLANC, to spend 25% of the school year with MITCHEL BRETT LEBLANC. That conduct is in violation of the January 19, 2005 judgment. That conduct is contemptuous of the orders of Division M2 of this court." *Id.*, 2006-1307, p. 11, 953 So.2d at 123. *Cf. Havener*, 29,785, p. 8, 700 So.2d at 538 (wherein the Louisiana Second Circuit Court of Appeal vacated a finding of contempt when the trial court's reasons for judgment listed only a "lack of communications" between the parties as the basis for the contempt); *Garrett v. Andrews*, 1999-1929, pp. 3-4 (La. App. 1 Cir. 9/22/00), 767 So.2d 941, 942-43 (wherein the Louisiana First Circuit Court of Appeal vacated the judgment and sentence of contempt because based on the contempt judgment and statements made in open court "the trial court found appellant to have violated the December 20, 1994 judgment, but [failed] to state in what respect it found [the] judgment to have been violated").

Turning to the matter *sub judice*, the trial court concluded that Ms. Barak committed contempt for failure to exchange the parties' daughters for their physical custody periods with Dr. Saacks. This constitutes a constructive contempt of court because it occurred outside the presence of the court. *See* La. C.C.P. arts. 222 and 224. Per La. C.C.P. art. 225(B), the trial court was required to recite the facts constituting the constructive contempt of court. In the July 30, 2021 judgment, the trial court explained that there were times when Ms. Barak let the

children stay at her home when they expressed that they did not want to go to Dr. Saacks' home. The trial court further noted in the July 30, 2021 judgment that Ms. Barak's action violated the parties' custody schedule. This demonstrates that the trial court found Ms. Barak in contempt for failure to abide by the custody schedule by allowing the parties' daughters to stay at her home during Dr. Saacks' custody time. Considering the jurisprudence interpreting La. C.C.P. art. 225(B), the trial court's July 30, 2021 judgment adequately recited the facts constituting Ms. Barak's constructive contempt.

We also note that Ms. Barak asserts that the trial court erred because "[a] parent of a very distraught child need not physically force her to participate in the visitation and contact at issue, when the child vehemently and hysterically protests, as she has a complete defense to any contempt adjudication." However, in the July 30, 2021 judgment, in partially denying the Motion for Contempt against Ms. Barak, the trial court took this into consideration. The July 30, 2021 judgment specifically observed that "*[m]ore recently*, [S.S.] began to experience more severe reactions and started seeing a therapist who advised that it would be harmful for her father to exercise time with [S.S.]. The Court finds Ms. Barak's reliance on the recommendation of [S.S.]'s therapist to be a justifiable cause for not complying with the physical custody schedule." (Emphasis added). Moreover, the record before this Court does not indicate that the daughters' reluctance on the prior occasions when Ms. Barak failed to turn them over rose to the level as the cases cited by Ms. Barak in her brief. *Cf Mason v. Hadnot*, 2008-2015, p. 8 (La. App. 1 Cir. 2/13/09), 6 So.3d 256, 261 (wherein the Louisiana First Circuit Court of Appeal found good cause for the mother's failure to obey an order regarding visitation because the father's "actions created a 'reasonable fear' in [the child] that

if she returned for visitation with him, she would be subjected to another . . . incident [of corporal punishment]" after the father admitted to striking the eleven-year-old child ten to fifteen times with a belt).

Accordingly, we conclude that Ms. Barak's third assignment of error is without merit.

## DECREE

Considering the foregoing, we vacate that portion of the July 30, 2021 judgment that granted "unsupervised physical custody periods" to Dr. Saacks; and we remand this matter to the trial court with instructions to conduct a contradictory hearing within twenty days of the date of this Opinion and to abide by the mandates of the Post-Separation Family Violence Relief Act. Further, we affirm that portion of the judgment that found Ms. Barak in contempt. Because this matter involved application of the Post-Separation Family Violence Act and the trial court found Dr. Saacks to be the perpetrator of the family violence, all costs of this appeal are assessed against him.

**VACATED IN PART AND REMANDED WITH INSTRUCTIONS; AFFIRMED IN PART**